IN THE UNITED STATES DISTRICT COURT FILED
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| TERRY DANIEL McDONALD, | § |
| TDCJ No. 1497519, | § |
| Petitioner, | § |
| | § |
| v. | § |
| | § |
| RICK THALER, | § |
| Director, Texas Department of | § |
| Criminal Justice, Correctional | § |
| Institutions Division, | § |
| Respondent. | § |

EP-12-CV-92-FM

## MEMORANDUM OPINION AND ORDER

Before the Court are Petitioner Terry Daniel McDonald's ("McDonald") pro se petition under 28 U.S.C. § 2254 for a writ of habeas corpus by a person in state custody [ECF No. 1], Respondent Rick Thaler's ("Thaler") answer with brief in support [ECF No. 18], McDonald's response to Thaler's answer [ECF No. 26], and the state court records from McDonald's murder case.[1] In his petition, McDonald challenges Thaler's custody of him pursuant to a judgment and sentence of the 409th District Court of El Paso County, Texas. He alleges, among other things, his counsel provided constitutionally ineffective assistance, the state courts abused their discretion, and the prosecutor failed to present sufficient evidence to prove the decedent's cause of death. In his answer, Thaler asserts McDonald has failed to meet his burden under the Antiterrorism and Effective Death Penalty Act ("AEDPA")[2] for obtaining federal relief. In his reply, McDonald maintains Thaler's assertion his claims lack merit is improper, and he is entitled to § 2254 relief. After carefully reviewing the record and for the reasons discussed below, the

---

[1] *State v. McDonald*, Cause No. 20050D05862 (409th Dist. Ct., El Paso Cnty., Tex. Feb. 4, 2008), *aff'd*, *McDonald v. State*, No. 08-08-00103-CR, 2010 WL 3910424 (Tex. App.–El Paso Sept. 30, 2010, pet. ref'd).

[2] Pub.L. No. 104-132, 110 Stat. 1214.

Court finds McDonald is not entitled to § 2254 relief. The Court will accordingly deny

McDonald's petition and decline to certify his issues for appeal.

## INDEX

I. FACTUAL AND PROCEDURAL HISTORY ..................................................................2
II. APPLICABLE LAW ........................................................................................................8
III. ANALYSIS ....................................................................................................................11
  A. Ineffective Assistance by Appellate Counsel .........................................................11
  B. Abuse of Discretion by Intermediate Appellate Court ..........................................14
  C. Ineffective Assistance by Trial Counsel .................................................................15
    1. Suppression Hearing..............................................................................................17
      (a) Morales's Search ..............................................................................................17
      (b) McDonald's Statements ...................................................................................19
      (c) *Edwards* Challenge .........................................................................................21
    2. Morales's Search .................................................................................................23
    3. Recorded Conversations .....................................................................................24
    4. Internet Service ...................................................................................................25
    5. Prosecutor's Inflammatory Comments ...............................................................26
    6. Voluntariness Instruction ....................................................................................28
  D. Trial Court Errors - Suppression Hearing ..............................................................29
    1. Arrest Warrant .....................................................................................................29
    2. Inculpatory Statements .......................................................................................30
  E. Trial Court Error - Trial Counsel's Motion to Withdraw ......................................32
  F. Trial Court Error - Admission of Recorded Telephone Conversations ..................33
  G. Trial Court Error - Rebuttal Witnesses ..................................................................35
  H. Sufficiency of the Evidence ....................................................................................37
  I. Trial Court Error - Extraneous Offense Evidence ..................................................40
IV. CERTIFICATE OF APPEALABILITY .....................................................................41
V. CONCLUSION AND ORDERS ...................................................................................42

## I. FACTUAL AND PROCEDURAL HISTORY

Felipe Andrade ("Andrade") rented out space in his in El Paso, Texas, duplex to others,

including long-time tenant Darryl Glidewell ("Glidewell"). In November of 2004, Andrade

agreed to let McDonald live rent-free in his duplex in exchange for McDonald's help with day-

to-day tasks such as doing yard work, arranging medical appointments, and purchasing

prescriptions. McDonald initially stayed in his own room, but after a few months, moved in with

Andrade in his room.

At some time in late May of 2005, Andrade disappeared. When Glidewell questioned McDonald about the disappearance, McDonald claimed Andrade had gone on a trip to Washington state, but was keeping in contact through emails and instant messaging. About that same time, McDonald threw out Andrade's dresser, assumed full control over the house, and locked himself in Andrade's room.

Andrade's sister, Rachel Morales ("Morales"), grew concerned when she stopped hearing from her brother. Morales sent her eldest brother to check on Andrade, but no one answered the door. Morales went to Andrade's duplex in late August of 2005, but she also received no answer when she knocked on the door. On August 30, 2005, Morales returned to Andrade's duplex with her brother and husband, and, after receiving no response from inside, removed the back door from its hinges and entered the house. Once inside, Morales confronted McDonald, who had just exited Andrade's bedroom. McDonald told Morales that Andrade had left and was never coming back. McDonald further relayed that Andrade had put him in charge of the house and his finances. Morales found McDonald's explanation implausible, and she grew more suspicious when she observed Andrade's eyeglasses, checkbook, passport, and medical supplies for diabetes in a trash can. Morales warned McDonald that if she did not hear from her brother Andrade by the following day, she would call the police.

The next day, Morales returned to Andrade's duplex with the police. McDonald, however, had already departed with his personal belongings and the hard drive from a computer. On September 22, 2005, Glidewell and Morales discovered Andrade's decomposed corpse buried under a truck camper shell in the front yard of the duplex. The autopsy revealed a degree of decomposition consistent with being buried in the ground for approximately four months. Further, the autopsy established that the cause of Andrade's death was asphyxiation due to

-3-

compression of the neck, and noted a skull fracture may have contributed to his death.

A check of Andrade's bank records showed ATM withdrawals and online purchases from June through October of 2005. Using these bank records, the police tracked McDonald to Bayside, Wisconsin. On October 4, 2005, local police officers in Bayside arrested McDonald for Andrade's murder. After they transported McDonald to the police station, an officer discovered Andrade's automated teller machine ("ATM"), check, and Lone Star cards tucked into a seam in the backseat floorboard of the police cruiser.

A grand jury in El Paso indicted McDonald for murder on December 20, 2005. With the indictment, the State gave notice of its intent to introduce evidence of extraneous offenses.

Before trial, McDonald moved to suppress all statements obtained from him by law enforcement officers. The trial court, after conducting an evidentiary hearing and reviewing the evidence, found McDonald intelligently, knowingly, and voluntarily waived his rights under the United States Constitution, Texas Constitution, and the Texas Code of Criminal Procedure. Furthermore, the trial court found McDonald voluntarily and intelligently made his statements to the police.

At trial, McDonald claimed he killed Andrade in self defense. McDonald testified that Andrade, out of the blue, asked McDonald to perform oral fellatio on him. When he refused, Andrade persisted in his request over the next week. McDonald admitted he eventually acquiesced, claiming Andrade would have kicked him out of the duplex if he had refused.

Turning to the day of Andrade's death, McDonald claimed Andrade, while heavily intoxicated, demanded sexual favors and ordered McDonald to sodomize him. McDonald also recalled that when he refused, Andrade became angry and threw a book and bicycle pump at him. McDonald said he attempted to calm Andrade down, but Andrade raised his left hand in a threatening manner while holding a coffee mug. At that point, McDonald grabbed Andrade's

-4-

hand, and they became entangled in a fight. McDonald claimed he felt a blow to his head, lost consciousness, and fell to the floor. When he awoke, McDonald said he found himself on top of Andrade. McDonald could not recall what had happened, but he saw blood trickling down from Andrade's ear and mouth. McDonald admitted he did not call for help, and when night fell, he buried Andrade in the front yard and covered the grave with a camper shell. The jury, after hearing all the evidence, rejected McDonald's self-defense argument and found him guilty of murder.

During the punishment phase of the trial, the State introduced evidence that McDonald had previously murdered a woman named Mary Mount ("Mount") in Florida. According to McDonald's confession, he enjoyed physically demanding sex with Mount, and, after having sex one night, he awoke to find her having trouble breathing and clutching at her throat. He tried to help her with chest compressions and by massaging her throat, but in his state of panic and anxiety, he blacked out. When he regained consciousness, McDonald found himself lying halfway on top of Mount and discovered she was not breathing. Rather than calling for help, McDonald stuffed her body in a duffle bag, put it in the trunk of her car, drove to her mother's house, and stole Mount's computer and jewelry. He then drove west, using Mount's credit and debit cards along the way, and ultimately buried her body near the Sierra Blanca Border Patrol checkpoint in Hudspeth County, Texas.[3] McDonald also pleaded true to a prior felony conviction by a general court martial for a barracks larceny. The jury, after hearing this evidence, assessed punishment at confinement for life and a $10,000 fine.

McDonald's appellate attorney raised three issues in his direct appeal. First, he claimed McDonald's trial counsel provided ineffective assistance when he failed to timely raise an

---

[3] McDonald took law enforcement officers to Mount's burial site near Texas mile marker 99 on Interstate 10.

insanity defense, despite evidence showing McDonald was mentally ill, and failed to request an instruction on sudden passion, when the evidence raised such a defense. Second, he asserted the prosecutor engaged in improper sidebar comments when she said, "I have zero respect for this Defense. I find it slimy, offensive and tricky."[4] Finally, he argued the trial court violated the attorney-client privilege by admitting phone call recordings between McDonald and his stepmother, Judy McDonald. According to McDonald, because he had appointed his stepmother, a non-licensed attorney, to act on his behalf under a durable power of attorney, and because she was working on behalf of his trial counsel, any communications between them were privileged. The Eighth Court of Appeals rejected all of McDonald's arguments and affirmed the trial court's judgment. The Texas Court of Criminal Appeals thereafter refused McDonald's petition for discretionary review.[5]

McDonald then filed an application for state writ of habeas corpus. The Texas Court of Criminal Appeals denied him relief without a written order.[6] This proceeding followed.

Mindful of McDonald's pro se status, the Court construes his instant petition liberally.[7] The Court understands him to reassert nine grounds for relief:

> A.   His appellate counsel provided constitutionally ineffective assistance
>       by failing to:
>       1.    Communicate with McDonald about the appeal;

---

[4] *McDonald*, 2010 WL 3910424, at *7.

[5] *In re McDonald*, PD-1511-10, 2011 Tex. Crim. App. LEXIS 409 (Tex. Crim. App. Mar. 11, 2011).

[6] *Ex parte McDonald*, WR 74,854-02 (Tex. Crim. App. Nov. 30, 2011).

[7] *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding pro se pleadings to less stringent standards than formal pleadings drafted by lawyers); *see also Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) (explaining liberal construction allows active interpretation of a pro se pleading to encompass any allegation which may raise a claim for federal relief).

2.      Revise McDonald's appellate brief according to his instructions; and

3.      Draft a response to the State's reply brief.

B.      The state intermediate court of appeals abused its discretion by denying his appellate attorney's motion to withdraw.

C.      His trial counsel provided constitutionally ineffective assistance by failing to independently investigate the facts and:

    1.      Prepare for a suppression hearing and failing to challenge:

        (a).    Evidence seized by the victim's sister as the product of an illegal search;

        (b).    McDonald's confessions on the ground that adversarial proceedings had commenced in Milwaukee and his right to counsel had attached; and

        (c).    Procedures used in the investigation in violation of the *Edwards* Rule after McDonald had requested that an attorney be appointed;

    2.      Challenge the introduction of evidence obtained through Morales's illegal search of the home;

    3.      Present mitigation evidence concerning recorded telephone conversations;

    4.      Challenge evidence presented through an affidavit concerning the date that internet service was provided to the complainant's home;

    5.      Adequately challenge the State's inflammatory comments and seek a mistrial based on the prejudicial comments made by the prosecutor; and

    6.      Request a voluntariness instruction during the punishment phase of the trial concerning comments about the extraneous murder.

D.      The trial court abused its discretion by finding:

    1.      Probable cause existed to issue an arrest warrant; and

    2.      Inculpatory statements by McDonald were admissible although detectives ignored McDonald's requests for counsel.

E.      The trial court abused its discretion by denying trial counsel's motion to withdraw from McDonald's defense due to "irreconcilable differences."

F.      The trial court abused its discretion by ruling that recorded telephone conversations between McDonald and his step-mother were admissible.

G.      The trial court abused its discretion by ruling that character evidence from extraneous offense witnesses was admissible for rebuttal purposes.

H.      The evidence presented was insufficient to prove either of the State's two theories concerning the cause of death as described by the indictment or disprove a theory of self-defense.

I.      The punishment phase of the trial was voided because the State was allowed to rely on inadmissible extraneous offense evidence.[8]

In his reply, Thaler concedes that McDonald's petition is not barred by the statute of limitations,[9] that it is not a successive petition,[10] and that he has exhausted his available state remedies. Thaler maintains, however, that McDonald's petition fails to demonstrate the state court determination that his claims lacked merit was so objectively erroneous that fairminded jurists could disagree on the correctness of its decision. In the alternative, he asserts McDonald has failed to meet his burden of proof and the Court should deny him relief. Accordingly, he asks the Court to dismiss McDonald's petition.

## II.  APPLICABLE LAW

"[C]ollateral review is different from direct review,"[11] and the writ of habeas corpus is "an extraordinary remedy"[12] reserved for those petitioners whom "society has grievously wronged."[13] It "is designed to guard against extreme malfunctions in the state criminal justice system."[14] Thus, a federal habeas court's role in reviewing state prisoner petitions is exceedingly narrow. Section 2254 allows a federal habeas court to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on

---

[8] Pet'r's Pet. 8–17.

[9] 28 U.S.C. § 2244(d) (2006).

[10] *Id.* § 2244(b).

[11] *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993).

[12] *Id.*

[13] *Id.* at 634.

[14] *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stephens, J., concurring)).

the ground that he is in custody in violation of the Constitution or laws or treaties of the United

States."[15]  A court may not grant relief to correct errors of state constitutional, statutory, or

procedural law, unless a federal issue is also present.[16]

Moreover, a federal habeas court must generally defer to state court decisions on the

merits[17] and on procedural grounds.[18]  "Indeed, federal courts do not sit as courts of appeal and

error for state court convictions."[19]  Thus, according to 28 U.S.C. § 2254(d), a federal habeas

court should deny claims decided by state courts on the merits unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.[20]

A decision is contrary to clearly established federal law if the state court reaches a

conclusion opposite to a decision reached by the Supreme Court on a question of law or if the

state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts.[21]  An application of clearly established federal law is unreasonable if the

---

[15] 28 U.S.C. § 2254(a) (2006).

[16] *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996).

[17] *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).

[18] *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991); *Muniz v. Johnson*, 132 F.3d 214, 220 (5th Cir. 1998).

[19] *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

[20] 28 U.S.C. § 2254(d).

[21] *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000).

state court identifies the correct governing legal principle, but unreasonably applies that principle to the facts.[22]

In reviewing a petition, a federal court should focus "on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence."[23] Indeed, a state court is presumed to "know and follow the law."[24] Even where the state court fails to cite applicable Supreme Court precedent or is unaware of such precedent, the deferential standard of review nevertheless applies "so long as neither the reasoning nor the result of the state-court decision contradicts" Supreme Court precedent.[25]

Accordingly, a petitioner merits federal habeas relief only where the state-court decision is incorrect or objectively unreasonable.[26] Moreover, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'" on the correctness of the state court's decision.[27] Thus, as a precondition for obtaining habeas corpus relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[28]

---

[22] *Id.*

[23] *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc); *see Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002) ("[W]e review only the state court's decision, not its reasoning or written opinion[.]").

[24] *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

[25] *Early v. Packer*, 537 U.S. 3, 8 (2002).

[26] *Woodford*, 537 U.S. at 27.

[27] *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

[28] *Id.* at 786–87.

Furthermore, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[29]  A petitioner may overcome this presumption by a showing "there is reason to think some other explanation for the state court's decision is more likely."[30]

Finally, a federal court's review of a state court's decision is "limited to the record that was before the state court that adjudicated the claim on the merits."[31]  The state court's factual findings "shall be presumed to be correct" unless the petitioner carries "the burden of rebutting the presumption of correctness by clear and convincing evidence."[32]  "The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."[33]

With these principles in mind, the Court turns to McDonald's claims.

### III.  ANALYSIS

*A.     Ineffective Assistance by Appellate Counsel*

McDonald first alleges his appellate counsel provided constitutionally ineffective assistance when he failed to (1) communicate with McDonald about his appeal, (2) revise his appellate brief according to McDonald's instructions, and (3) draft a response to the State's reply brief.

---

[29] *Id.* at 784–85.

[30] *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

[31] *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398–99 (2011).

[32] 28 U.S.C. § 2254(e)(1).

[33] *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001) (citing *Marshall v. Lonberger*, 459 U.S. 422, 433 (1983)).

To succeed on an ineffective-assistance-of-appellate-counsel claim, a petitioner must satisfy the two requirements set out in *Strickland*.[34]  He must demonstrate (1) his appellate counsel's performance was deficient, and (2) the deficiency prejudiced his appeal.[35]  To demonstrate the first requirement—deficiency on the part of counsel—a petitioner must show "that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them."[36]  However, appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."[37]  Thus, it is possible that an ineffectiveness claim may be "based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent."[38]  To establish that a failure to raise an issue was deficient, a petitioner must show that a particular nonfrivolous issue was clearly stronger than the issues counsel did present.[39]  To demonstrate the second requirement—counsel's errors were prejudicial—a petitioner must show that, but for appellate counsel's deficient performance, he would have prevailed on appeal.[40]

McDonald's claims fail because they do not satisfy either *Strickland* requirement.  His appellate counsel was not required to raise every conceivable argument urged by McDonald,

---

[34] *Smith v. Robbins*, 528 U.S. 259, 285–86 (2000) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).

[35] *Id.* at 285.

[36] *Id.* at 286.

[37] *Id.* at 288 (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983)).

[38] *Id.* (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).

[39] *Id.*

[40] *Id.* at 285–86.

regardless of its merit.[41]  He was obligated to assess and choose among potential issues, according to his professional judgment of their merits and the strategic approach being taken.[42]

McDonald's appellate attorney chose three issues for his direct appeal.  First, he claimed McDonald's trial counsel provided ineffective assistance when he failed to timely raise an insanity defense or request an instruction on sudden passion.  Second, he asserted the prosecutor engaged in improper sidebar comments.  Finally, he argued the trial court violated the attorney-client privilege by admitting a phone call recording between McDonald and his stepmother.  There is no indication from the record that McDonald's appellate attorney did anything other than focus on the arguments with the most potential for success.  Moreover, McDonald does not identify any particular issue arguably stronger than the issues raised by his appellate counsel in his petition.

In addition, McDonald fails to show prejudice.  He does not explain how his appellate counsel's failure to communicate with him about his appeal, revise his appellate brief according to his instructions, or draft a response to the State's reply brief harmed his cause.  As such, he fails to show these purported errors necessarily changed the outcome of the appeal.  Furthermore, McDonald cannot demonstrate prejudice by his appellate counsel's failure to raise what may be meritless issues on appeal.[43]  As a result, McDonald cannot show that, but for his appellate counsel's failure to raise his claims, he would have prevailed on appeal.

Because McDonald does not demonstrate that the state court's rejection of his ineffective

---

[41] *Id.* at 288.

[42] *Jones*, 463 U.S. at 751–52.

[43] *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

assistance of appellate counsel claim was an unreasonable or contrary to clearly established Federal law, the Court will deny it.[44]

>    B.    *Abuse of Discretion by Intermediate Appellate Court*

McDonald alleges that the Eighth Court of Appeals in El Paso, Texas, abused its discretion by denying his appellate counsel's motion to withdraw as McDonald's attorney of record.  McDonald argues that after his counsel refused to amend his brief in accordance with McDonald's wishes, McDonald told the "Court of Appeals that a conflict of interest existed."[45] McDonald also requested a delay so that the appellate court could either appoint another attorney or permit McDonald to proceed pro se.

An indigent defendant's right to counsel does not require the trial court to appoint a counsel agreeable to the accused.[46]  In general, personality conflicts and disagreements concerning trial strategy do not provide valid grounds for withdrawal.[47]  Unless a defendant shows adequate grounds for the appointment of new counsel or chooses to waive his right to counsel and to proceed pro se, he must accept the counsel appointed by a court.[48]  McDonald fails to show adequate cause for the Eighth Court of Appeals to allow his appellate counsel to

---

[44] 28 U.S.C. § 2254(d).

[45] Pet'r's Pet. 9.

[46] *King v. State*, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000).

[47] *Id.*

[48] *See Green v. Johnson*, 160 F.3d 1029, 1045 (5th Cir. 1998) (explaining a defendant "does not enjoy a constitutional right to the counsel of his choice"); *United States v. Breeland*, 53 F.3d 100, 106 n.11 (5th Cir. 1995) (dismissing as frivolous appellant's claim that the district court erred in refusing to dismiss his court-appointed counsel); *Richardson v. Lucas*, 741 F.2d 753, 756 (5th Cir. 1984) ("Although the sixth amendment's right to counsel in criminal cases is absolute, an accused's right to a particular counsel is not.")

withdraw.  Because a defendant is not entitled to appointed counsel of his choice,[49] and because the record supports the appellate court's decision to deny the motion to withdraw,[50] the state court's denial of relief for this claim was reasonable.

      C.     *Ineffective Assistance by Trial Counsel*

      McDonald contends that his trial attorney provided constitutionally ineffective assistance during all phases of his trial.  Specifically, he claims his counsel erred when he failed to (1) prepare for a suppression hearing, (2) object to the introduction of the evidence obtained by Morales during the search of her brother Andrade's duplex, (3) present mitigation evidence concerning recorded telephone conversations, (4) challenge evidence presented through an affidavit concerning the date that internet service was provided to Andrade's home, (5) adequately challenge the State's inflammatory comments; and (6) request a voluntariness instruction during the punishment phase of the trial concerning comments about Mount's murder in Florida.

      To prevail on an ineffective-assistance-of-trial-counsel claim, a petitioner must meet the two requirements set out in *Strickland*.[51]  A petitioner must show (1) his counsel's actions fell below an objective standard of reasonableness, and (2) the ineffectiveness of counsel prejudiced his cause.[52]  The test's performance prong centers on whether counsel's assistance was

---

[49] *Green*, 160 F.3d at 1045; *Breeland*, 53 F.3d at 106 n.11; *Richardson*, 741 F.2d at 756.

[50] *Gandy v. Alabama*, 569 F.2d 1318, 1323–24 (5th Cir. 1978) ("The right to choose counsel may not be subverted to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice.").

[51] *Strickland v. Washington*, 466 U.S. 668 (1984).

[52] *Id.* at 686–87.

reasonable, considering all the circumstances at the time of counsel's conduct.[53] In order to

obtain relief, a petitioner must establish "that counsel made errors so serious that counsel was not

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[54] In assessing

whether a particular counsel's performance was constitutionally deficient, "a court must indulge

a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance; that is, the defendant must overcome the presumption that, under the

circumstances, the challenged action 'might be considered sound trial strategy.'"[55] A deficiency

in counsel's performance, even if professionally unreasonable, does not equal ineffective

assistance of counsel; the petitioner must also demonstrate actual prejudice.[56] The test's

prejudice prong requires the petitioner to "show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different. A

reasonable probability is a probability sufficient to undermine confidence in the outcome."[57] A

failure to establish either prong of this test requires a finding that counsel's performance was

constitutionally effective.[58]

---

[53] See id. at 688 ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.").

[54] Id. at 687.

[55] Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

[56] See id. at 691–92 ("The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.").

[57] Id. at 694.

[58] Id. at 687 ("Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable."); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove

1.    *Suppression Hearing*

(a)    *Morales's Search*

First, McDonald argues his trial counsel was unprepared for the pre-trial suppression hearing and erred by failing to object to any evidence obtained as a result of Morales's "forced entry" of Andrade's home.[59]  McDonald maintains it was only through Morales's entry into her brother's home that law enforcement authorities identified him "as a suspect in the case."[60] McDonald argues that because Texas state law forbids the introduction of illegally obtained evidence *by any person*, the trial court should have excluded all the evidence obtained by Morales when she broke into Andrade's home.[61]

Texas's statutory exclusionary rule provides that "[n]o evidence obtained by an officer *or other person* in violation of any provisions of the Constitution or laws of [Texas or the United States] shall be admitted in evidence against the accused on the trial of any criminal case."[62]  This state exclusionary rule clearly applies to evidence unlawfully obtained by any person.[63] McDonald, however, does not state what provision of law he believes Morales violated when she entered her brother's home.  He merely asserts she committed a "forced entry."[64]  Moreover,

---

either deficient performance or actual prejudice is fatal to an ineffective assistance claim."); *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one.") (citing *Spriggs v. Collins*, 993 F.2d 85, 87 (5th Cir. 1993)).

[59] Pet'r's Pet. 10.

[60] *Id.*

[61] Pet'r's Mem. 7–9 (citing Tex. Code Crim. Proc. Ann. art. 38.23(a)).

[62] Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2005) (emphasis added).

[63] *State v. Johnson*, 939 S.W.2d 586, 587 (Tex. Crim. App. 1996).

[64] Pet'r's Mem. 7.

exceptions exist which could make Morales's "forced entry" into her brother's home justifiable under Texas law.[65]  For example, the need to protect or preserve life or avoid serious injury provides justification for what would otherwise be unlawful.[66]  In this case, Morales was obviously concerned about the whereabouts and welfare of her brother, and the emergency exception to the probable cause requirement could have excused her search of his home.[67]  Furthermore, the Fourth Amendment does not protect against a search conducted by a private individual acting in a private capacity.[68]  Rather, it proscribes only governmental action and is "wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any government official.'"[69]  Because the evidence did not show that Morales's search was unlawful under Texas law or violated the Fourth Amendment, McDonald's counsel did not err by failing to object to the introduction of Morales's testimony or the evidence she discovered.

McDonald has also not shown that the introduction of evidence obtained through Morales's search harmed his defense.  Ample additional evidence existed which would have inevitably led to his identification as Andrade's killer:  Glidewell knew that McDonald continued

---

[65] *Pitonyak v. State*, 253 S.W.3d 834, 850 (Tex. App.–Austin 2008, pet. ref'd).

[66] *Mincey v. Arizona*, 437 U.S. 385, 392 (1978); *see also Laney v. State*, 117 S.W.3d 854, 860–61 (Tex. Crim. App. 2003).

[67] *See Brimage v. State*, 918 S.W.2d 466, 503 (Tex. Crim. App. 1996) (op. on reh'g) (holding that the emergency doctrine justified a warrantless search to locate a missing person or to find evidence that would lead to his discovery at different location).

[68] *United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *United States v. Runyan*, 275 F.3d 449, 457 (5th Cir. 2001).

[69] *Jacobsen*, 466 U.S. at 113–14 (quoting *Walter v. United States*, 447 U.S. 649, 662 (1980) (Blackmun, J., dissenting)).

to live in Andrade's home after Andrade's disappearance, McDonald suspiciously disappeared immediately after Morales questioned him about her brother's disappearance, and the police arrested McDonald with Andrade's possessions. It is clear that McDonald would have been arrested, and much of the evidence introduced eventually discovered, even if Morales's investigation had been suppressed. Therefore, McDonald cannot show that any trial counsel error in failing to challenge Morales's testimony or the fruits of her search prejudiced his defense. Thus, the state court's rejection of this claim was neither unreasonable nor contrary to clearly established Federal law.[70]

### (b)    *McDonald's Statements*

Next, McDonald argues that trial counsel was unprepared for the pre-trial suppression hearing because he was unfamiliar with records concerning McDonald's arrest in Wisconsin. McDonald contends that because "adversarial proceedings" had been initiated against him while he was still in Wisconsin, "subsequent waivers, statements, and evidence were obtained in violation to the Sixth Amendment right to counsel."[71]  McDonald asserts his trial counsel should have moved to suppress his statements at the pre-trial suppression hearing on Sixth Amendment right to counsel grounds.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."[72] The Sixth Amendment right to counsel applies in all state criminal prosecutions in which the defendant is accused of a

---

[70] 28 U.S.C. § 2254(d).

[71] Pet'r's Mem. 4.

[72] U.S. CONST. amend. VI; *Gideon v. Wainwright*, 372 U.S. 335, 339 (1963).

felony.[73]  Once the adversarial judicial process has been initiated, the Sixth Amendment

guarantees a defendant the right to have counsel present at all "critical" stages of the criminal

proceeding.[74]  A police interrogation after charges have been filed is considered a critical stage.[75]

However, Sixth Amendment rights may be waived if an accused intelligently, knowingly, and

voluntarily waives them.[76]  An accused validly waives his Sixth Amendment right to have

counsel present during interrogation when he is read his *Miranda* rights and he agrees to waive

those rights.[77]  Thus, the Sixth Amendment does not bar police-initiated interrogation of an

accused who has previously waived his right to counsel.[78]

The record shows defense counsel did move to suppress McDonald's statements on Sixth

Amendment grounds.[79]  The evidence supports the trial court's conclusion[80] that law enforcement

---

[73] *Gideon*, 372 U.S. at 342.

[74] *Montejo v. Louisiana*, 556 U.S. 778 (2009); *Hughen v. State*, 297 S.W.3d 330, 334 (Tex. Crim. App. 2009).

[75] *Brewer v. Williams*, 430 U.S. 387, 398(1977).

[76] *Patterson v. Illinois*, 487 U.S. 285, 292 (1988); *Hughen*, 297 S.W.3d at 334.

[77] *See Montejo*, 556 U.S. at 786 (noting that there is no reason to distinguish an unrepresented defendant from a represented one, for *Miranda* warnings adequately inform each type of defendant under both the Fifth and Sixth Amendments, of his right to have counsel present during questioning and make him aware of the consequences of a decision by him to waive his Sixth Amendment rights) (citing *Patterson*, 487 U.S. at 293 and overruling *Michigan v. Jackson*, 475 U.S. 625, 635–36 (1986) (previously holding that when police initiate interrogation after a defendant's Sixth Amendment assertion of his right to counsel at arraignment or similar proceeding, any subsequent waiver of that right is invalid).

[78] *Id.*

[79] *See* 1 Court Record 28–30 (Defendant's Motion to Suppress Confessions or Statements).

[80] *See* 1 Court Record 185 (Order Denying Motion to Suppress).

authorities gave McDonald *Miranda* warnings before he gave each of his three statements, and that McDonald freely and voluntarily made the statements without compulsion or persuasion.[81] The trial court's conclusion was reasonable in light of the evidence presented during the state court proceeding.  Thus, McDonald cannot established that his counsel's performance was deficient by failing to raise a Sixth Amendment objection or prejudiced his cause because McDonald waived his right to counsel and voluntarily cooperated with law enforcement officers. Therefore, the state court's rejection of this claim was reasonable.

> (c)    Edwards *Challenge*

Next, McDonald argues his attorney provided ineffective assistance when he failed to challenge, based on the Supreme Court's holding in *Edwards*,[82] the introduction of McDonald's October 19, 2005, statement to El Paso police officers concerning Mount's murder.  McDonald claims he requested an attorney on January 29, 2004, during questioning by Corpus Christi police officers in connection with the murder.  He contends that because he requested counsel in 2004, investigators could not approach him in 2005 and re-initiate interrogation without his counsel being present.

Under *Edwards*, once a person invokes his right to have counsel present during a custodial interrogation, a valid waiver of that right cannot be established by merely showing that

---

[81] *See* 2 Reporter's Record 11–38 (Testimony of Detective Ralph Lee), 47–58 (Testimony of Detective Joseph Ochoa), 70–134 (Testimony of Detective Joseph Ochoa), 138–141 (Testimony of Detective Joseph Ochoa), 154–166 (Testimony of Detective David Samaniego); *see also* State's Ex. 3 (Warnings Before Questioning, 10/05/05), State's Ex. 4 (Voluntary Statement of Terry Daniel McDonald, 10/05/05 at 4:15 p.m.), State's Ex. 5 (Warnings Before Questioning, 10/19/05 at 7:35 p.m.), State's Ex. 6 (Voluntary Statement of Terry Daniel McDonald, 10/19/05 at 7:15 p.m.), State's Ex. 7 (Voluntary Statement of Terry Daniel McDonald, 10/19/05 at 9:40 p.m.), State's Ex. 8 (Warnings Before Questioning, 10/19/05 at 6:33 p.m.), State's Ex. 9 (Warnings Before Questioning, 10/18/05 at 7:15 p.m.).

[82] *Edwards v. Arizona*, 451 U.S. 477 (1981).

-21-

the suspect responded to police-initiated interrogation after being advised of his rights again.[83]
The purpose of the *Edwards* rule is to "prevent police from badgering a defendant into waiving
his previously asserted *Miranda* rights."[84]  The prophylactic rule protects the suspect who has
made the decision not to speak to law enforcement officers without his lawyer and clearly
communicated that decision to the police.[85]  However, in *Shatzer*,[86] the Supreme Court held an
interruption in custody would void the presumption created by *Edwards* that a subsequent waiver
was involuntary.[87]

　　Here, there was a significant break in custody between McDonald's interrogation by the
Corpus Christi police in January, 2004, and his subsequent interrogation on another charge by the
El Paso police in October, 2005.  While it is not clear what date McDonald was released from
custody, he was free the entire time that he was living with Andrade.  The *Edwards* presumption
did not survive this lengthy break with regard to police questioning about the Florida murder.[88]
Therefore, McDonald cannot show his counsel performed deficiently for failing to raise an
*Edwards* argument at the suppression hearing.

　　Similarly, McDonald contends that portions of his statements from the October 19, 2005,
interview were inadmissible because, prior to giving the statements, he requested an attorney
during his appearance before a magistrate.  He maintains that after he requested the attorney, the

---

[83] *Id.* at 485.

[84] *Michigan v. Harvey*, 494 U.S. 344, 350 (1990).

[85] *Texas v. Cobb*, 532 U.S. 162, 175 (2001) (Kennedy, J., concurring).

[86] *Maryland v. Shatzer*, 130 S. Ct. 1213 ( 2010).

[87] *Id.* at 1221.

[88] *Id.*

-22-

police questioning continued unabated.  He cites a motion for appointment of counsel in the clerk's record as evidence for this proposition.[89]  However, the document McDonald cites is a motion for the appointment of counsel on the grounds of his indigency.  It clearly states "I have been advised by the court of my right to representation by counsel *in the trial* of the charge pending against me."[90]  There is no indication that the magistrate produced the document in response to *Miranda* warnings or that it was proof that McDonald made his desire for counsel known in connection to his interrogation.  McDonald's attorney was unable to show that McDonald requested an attorney before a magistrate during the suppression hearing.[91]  McDonald has not offered proof that his attorney somehow erred in not presenting a winning argument that McDonald requested counsel to assist him during his interrogation.  Therefore, the state court's denial of relief on this claim was reasonable.

> 2.     *Morales's Search*

McDonald argues his trial counsel performed ineffectively by failing to object, during the guilt/innocence phase of the trial, to the introduction of evidence obtained by Morales.  As discussed above, McDonald has failed to show that Morales's "forced entry" constituted an illegal search and seizure under the Fourth Amendment because, among other things, the Fourth Amendment does not protect against searches conducted by a private individual acting in a private capacity.[92]  Furthermore, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions" such as the applicability of the Texas

---

[89] *See* 1 Clerk's Record 18 (Motion for Appointment of Counsel).

[90] *Id.* (emphasis added).

[91] 2 Reporter's Record 112.

[92] *United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *United States v. Runyan*, 275 F.3d 449, 457 (5th Cir. 2001).

exclusionary rule to the instant case.[93] Finally, counsel has no duty to raise frivolous objections.[94] Thus, the state court's rejection of this claim was neither unreasonable nor contrary to clearly established Federal law.[95]

### 3. Recorded Conversations

McDonald argues that counsel performed ineffectively by failing to challenge the State's introduction into evidence of portions of his telephone calls to his step-mother. Specifically, McDonald avers his counsel should have argued that the recorded conversations violated the rule of optional completeness.

According to Texas Rule of Evidence 107, when part of a statement is given in evidence by one party, the other party may have the remainder admitted.[96] Rule 107 guards against the possibility of confusion, distortion, or false impression that could arise from the use of an act or statement taken out of proper context.[97]

It is not clear from McDonald's briefing of this issue what the missing parts of the telephone conversations would have established. McDonald offers no evidence that the

---

[93] *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

[94] *See Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997) ("Objection to its admission would have been futile, and failure to assert a meritless objection cannot be grounds for a finding of deficient performance.").

[95] 28 U.S.C. § 2254(d).

[96] *See* Tex. R. Evid. 107 ("When part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, and any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence, as when a letter is read, all letters on the same subject between the same parties may be given.").

[97] *Livingston v. State*, 739 S.W.2d 311, 331 (Tex. Crim. App. 1987); *Araiza v. State*, 929 S.W.2d 552, 555-56 (Tex. App.–San Antonio 1996, pet. ref'd).

-24-

conversations contained potentially mitigating material or substantiated his arguments. Therefore, his claim remains completely conclusory, and conclusory assertions are insufficient to support an ineffective assistance of counsel claim for failing to present the evidence.[98]  Thus, McDonald cannot show either that counsel erred by failing to present such an argument or that such error prejudiced the defense.  Therefore, the state court's denial of relief on this claim was reasonable.

### 4.    Internet Service

McDonald argues his counsel provided constitutionally ineffective assistance when he failed to object, on Confrontation Clause grounds, to the affidavit prepared by a representative of Time Warner Cable.  He contends that because the prosecution offered the affidavit without calling the averring witness, his attorney should have objected that it was inadmissible testimonial evidence under the Sixth Amendment.

The Confrontation Clause grants the accused in a criminal prosecution the right to confront the witnesses against him.[99]  Here, the trial court admitted the Time Warner Cable affidavit without objection.[100]  Had McDonald's counsel challenged the affidavit and required the prosecution to produce the averring witness, it may have underscored McDonald's misrepresentations about Andrade's internet usage.  Instead, the prosecution silently produced the affidavit and commented on it only in passing during closing argument.  McDonald's counsel may have made a strategic decision to minimize the affidavit's damage to McDonald's cause. Thus, McDonald has not overcome the strong presumption that counsel's conduct fell within the

---

[98] *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998).

[99] U.S. CONST. amend. VI.

[100] 7 Reporter's Record 39–40.

wide range of reasonable professional assistance.[101]

Even if McDonald's counsel erred when he failed to object to the introduction of the affidavit, McDonald cannot show that this error harmed his defense.[102]   It is not clear that McDonald's counsel could have ultimately excluded the evidence; the State may well have been able to call a witness to testify to the facts contained in the affidavit.   Further, the evidence contained in the affidavit was not so damaging that it likely made a difference in the verdict of the jury.[103]   In light of the strength of the State's case—including McDonald's incriminating statements, the fact that he was apprehended while in possession of Andrade's personal effects, and the measures taken by McDonald to obscure Andrade's death—it is unlikely that the affidavit, describing an ancillary issue, played a crucial part in deciding the jury's verdict. McDonald has established neither error nor prejudice.   The state court's denial of relief was reasonable.

5.      *Prosecutor's Inflammatory Comments*

Next, McDonald argues that his counsel erred by failing to request a mistrial when the prosecutor made prejudicial comments.   During closing arguments, the prosecutor argued that "I have zero respect for this Defense.   I find it slimy, offensive and tricky."[104]   McDonald's attorney objected and moved for an instruction that the jury disregard the argument—which the trial court granted—but did not move for a mistrial until the following day.[105]   The state court of appeals

---

[101] *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

[102] *Id.* at 687.

[103] *Id.*

[104] 8 Reporter's Record 58.

[105] *Id.*; 9 Reporter's Record 12.

ruled McDonald's attorney waived the issue on appeal when he moved for a mistrial too late to preserve error.[106]

In Texas state courts, there are four permissible areas of jury argument: (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) an answer to the argument of opposing counsel, and (4) a plea for law enforcement.[107]  The State may not use closing argument to strike at a defendant "over the shoulders of his counsel" or accuse that counsel of bad faith.[108]

Here, McDonald's attorney did make a timely objection to the prosecution commenting on the defense strategy, but failed to preserve the error on appeal.  The trial court instructed the jury to disregard the argument.[109]  "A jury is presumed to follow its instructions."[110]  Therefore, to the extent the comment was improper, it cannot be shown to have harmed McDonald's defense.  Had the state appellate court reached the merits of the argument, it likely would have presumed that the jury followed the trial court's instructions and ignored the comment.  Thus, McDonald cannot show that he was harmed by his counsel's failure to preserve the claim for appellate review.

Moreover, a second comment by the prosecution, which McDonald claims tied in with the first comment, was relatively innocuous.  The State argued McDonald's contention that the State was trying to trick the jury was "all part of Defense ploys and tricks."[111]  It is not clear that

---

[106] *McDonald v. State*, No. 08-08-00103-CR, 2010 WL 3910424, at *8 (Tex. App.–El Paso Sept. 30, 2010, pet. ref'd).

[107] *Campbell v. State*, 610 S.W.2d 754, 756 (Tex. Crim. App. 1980).

[108] *Fuentes v. State*, 664 S.W.2d 333, 335 (Tex. Crim. App. 1984).

[109] 8 Reporter's Record 58.

[110] *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

[111] 8 Reporter's Record 83.

this comment was improper; it may well have been a rebuttal to McDonald's contention that the State was being tricky.[112]  Moreover, in light of the plentiful evidence presented by the State, McDonald cannot show that the comment played a prejudicial role in determining the jury's verdict or that his trial counsel's decision not to object and further draw attention to the argument was unreasonable.  The state habeas court's denial of relief was reasonable.

      6.    *Voluntariness Instruction*

McDonald argues his trial counsel performed ineffectively during the punishment phase of the trial by failing to request a voluntariness instruction on his statements concerning Mount's murder.  McDonald avers that because he informed an El Paso detective he had previously obtained legal advice concerning the extraneous murder, the investigator should have realized he was potentially coercing McDonald into making a statement.

Texas law requires that, once the issue of the voluntariness of a defendant's confession has been raised before the jury, it must be charged "generally, on the law pertaining to such statement."[113]  Before the requested instruction is required, however, some evidence must be presented to the jury which raises the issue of voluntariness.[114]  The trial judge is sole judge of credibility of witnesses in a pretrial hearing and, absent a showing of abuse of discretion, a trial court's finding on the voluntariness of a confession will not be disturbed.[115]

Here, the evidence does not support a conclusion that McDonald's statements concerning the Florida murder were involuntary.  The passage McDonald now cites to support his claim

---

[112] *Campbell*, 610 S.W.2d at 756.

[113] Tex. Crim. Proc. Code Ann. art. 38.22 § 7 (Vernon 2005).

[114] *Hernandez v. State*, 819 S.W.2d 806, 812 (Tex. Crim. App. 1991).

[115] *Long v. State*, 823 S.W.2d 259 (Tex. Crim. App. 1991).

merely show that the El Paso detectives discussed McDonald's rights with him and that he revealed he once received advice to remain silent about the Florida murder. According to the interviewing detective's testimony, "[h]e never told me that he had legal counsel. He said that he had received some form of advice. . . . That he should not speak of the case."[116]

Because no evidence was apparently introduced at trial that McDonald's statements about Mount's murder were involuntary, it is unlikely that the trial court would have granted a motion to include the instruction. Thus, his counsel most likely could not have successfully moved for a voluntariness instruction.[117] McDonald's attorney was not ineffective for failing to make a frivolous jury instruction request.[118] The state court's denial of relief on this ground was reasonable.

### D.    Trial Court Errors During Suppression Hearing

Next, McDonald raises several claims challenging the validity of the trial court's findings in response to the pre-trial suppression hearing. Specifically, he contends the court erred by finding that the arrest warrant was valid and that his statements were voluntary. These claims raise many of the same issues addressed above as ineffective assistance of counsel claims.

### 1.    Arrest Warrant

McDonald maintains that only Morales's "illegal search" of her brother's home supported the arrest warrant. He also asserts that, because the investigating detective did not know how the

---

[116] 8 Reporter's Record 131.

[117] *Hernandez*, 819 S.W.2d at 812.

[118] *See Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) (explaining counsel's failure to make a frivolous objection is not deficient performance below an objective level of reasonableness); *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) ("'[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite.'") (quoting *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994)).

focus of the investigation settled on McDonald, the warrant remained unsubstantiated. Although McDonald does not cite to a specific court finding in the record, he contends the trial court erred by finding probable cause existed to support the arrest warrant.

The trial court never ruled on the legality of the arrest warrant because McDonald never challenged it. Rather, McDonald's counsel filed a motion to suppress his "confessions or statements."[119] Thus, it logically follows the trial court did not err because it did not enter a finding. Further, as discussed above, the evidence did not support a conclusion that Morales's search was unlawful under Texas law or violated the Fourth Amendment.[120] Moreover, additional independent evidence existed which would have inevitably led to McDonald's identification as Andrade's killer.

Similarly, McDonald argues that, because adversarial proceedings had commenced and the right to counsel had attached, the trial court erroneously found that buccal swabs were legally taken. Again, as discussed above, an accused may waive the Sixth Amendment right to counsel.[121] Here, the trial court found that McDonald had waived that right and voluntarily cooperated with investigators. McDonald offers no evidence that the buccal swabs were taken as the result of illegal interrogation.

>    2.    *Inculpatory Statements*

McDonald further argues that the trial court should have found that the *Edwards* rule

---

[119] *See* 1 Court Record 28–30 (Defendant's Motion to Suppress Confessions or Statements).

[120] *Brimage v. State*, 918 S.W.2d 466, 503 (Tex. Crim. App. 1996) (op. on reh'g); *United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *United States v. Runyan*, 275 F.3d 449, 457 (5th Cir. 2001).

[121] *Patterson v. Illinois*, 487 U.S. 285, 292 (1988); *Hughen v. State*, 297 S.W.3d 330, 334 (Tex. Crim. App. 2009).

barred further interrogation.[122]  This assertion reiterates McDonald's claim in the context of his

trial counsel's ineffective performance that *Edwards* barred questioning on the Florida murder.

As discussed above, however, the *Edwards* rule did not apply here because McDonald was not in

continuous custody from the date he requested an attorney in January 2004, until the time he gave

the challenged statements in October 2005.  The trial court correctly noted that McDonald had

requested counsel while in Corpus Christi, but proceeded to find that McDonald knowingly

waived his right to counsel when he made the statements to the El Paso detectives during a

subsequent period of custody.[123]  The trial court's findings were in concert with the progeny of

the *Edwards* cases.[124]

Moreover, McDonald's assertion that "[i]t is an uncontroverted fact that, on October 19,

2005, at 4:55 AM in El Paso, Texas, . . . McDonald requested an attorney at an Article 15.17

(PIA) hearing" is a matter of dispute.[125]  As discussed above, the document in question does not

appear to be a request for counsel in relation to the interrogation, but an application for the

appointment of counsel "in the trial of the charge pending against" McDonald.[126]  The record

does not contradict the trial court's finding that "at no time did TERRY MCDONALD request

the presence of counsel" during the October 19, 2005 interrogations.[127]  The fact that adversarial

---

[122] *Edwards v. Arizona*, 451 U.S. 477 (1981).

[123] *See* State Habeas Corpus Record 4–6, WR-74,854-02 (Findings of Fact and Conclusions of Law).

[124] *Maryland v. Shatzer*, 130 S. Ct. 1213, 1221 ( 2010).

[125] Pet'r's Mem. of Law 22 (citing 1 Court Record 18 (Motion for Appointment of Counsel)).

[126] 1Court Record 18.

[127] *See* State Habeas Corpus Record 6, WR-74,854-02 (Findings of Fact and Conclusions of Law).

proceedings had commenced, again, does not establish that McDonald could not have waived his right to counsel.

In sum, the trial court's findings during the suppression hearing were entirely reasonable. McDonald fails to show that the state courts' denial of relief on his claims was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court.[128]

E.    Trial Court Error - Trial Counsel's Motion to Withdraw

McDonald argues that the trial court erred by denying his trial counsel's motion to withdraw. McDonald asserts that after the suppression hearing, he felt the need to file pro se motions, "one of which included a motion to have counsel removed."[129] As a result, his trial counsel filed a motion to withdraw due to irreconcilable differences.[130] Ultimately, however, McDonald withdrew his motion.[131]

The aim of the Sixth Amendment is to guarantee an effective advocate, not necessarily the preferred advocate.[132] While a defendant is entitled to counsel capable of rendering competent, meaningful assistance, a defendant is not entitled to an attorney who agrees with his personal view of the prevailing law or the merits of the prosecutor's case, and will docilely do as the defendant insists.[133] Accordingly, a court has the discretion to deny a change of counsel if it

---

[128] *Brewer v. Williams*, 430 U.S. 387, 404–05 (1977).

[129] Pet'r's Pet. 13.

[130] *See* 2 Court Record 452–55 (Motion for Withdrawal of Counsel).

[131] 4 Reporter's Record 5–6.

[132] *Wheat v. United States*, 486 U.S. 153, 159 (1988).

[133] *Matter of Hipp, Inc.*, 5 F.3d 109, 114–15 (5th Cir. 1993).

would require a continuance,[134] there is no reason to believe the attorney's performance is suffering, or the defendant would not enjoy a better relationship with a different attorney.[135] McDonald has not shown that the trial court abused its discretion when it denied his trial counsel's motion to withdraw as counsel.  Moreover, the state court's rejection of this claim was neither unreasonable nor contrary to clearly established Federal law.[136]

F.    Trial Court Error - Admission of Recorded Telephone Conversations

McDonald argues that the trial court erred by allowing the State to publish telephone conversations with his step-mother, Judy McDonald, while he was in jail.[137]  McDonald fails to describe in his petition why the trial court should have ruled the recordings inadmissible.

McDonald raised, and the Eighth Court of Appeals rejected, a similar claim in his direct appeal.[138]  In his appeal, McDonald argued that "the trial court violated the attorney-client privilege by admitting a phone call recording between Appellant and his stepmother, Judy McDonald, . . . because he appointed Judy, a non-licensed attorney, to act on his behalf under a durable power of attorney," thus violating the attorney-client privilege.[139]  The court of appeals found that the appointment of a power of attorney did not create an attorney-client privilege, and "the trial court did not abuse its discretion by admitting the recording."[140]

---

[134] *United States v. Magee*, 741 F.2d 93, 95 (5th Cir. 1984).

[135] *Lowenfield v. Phelps*, 817 F.2d 285, 289 (5th Cir. 1987).

[136] 28 U.S.C. § 2254(d).

[137] Pet'r's Pet. 14.

[138] *McDonald v. State*, No. 08-08-00103-CR, 2010 WL 3910424, at *8–10 (Tex. App.–El Paso Sept. 30, 2010, pet. ref'd).

[139] *Id.* at *8.

[140] *Id.* at *10.

McDonald grounds his claim in state evidentiary law, rather than constitutional or federal law. Because federal habeas review is limited to matters of federal and constitutional law, the role of the federal habeas court in reviewing a challenge to a trial court's evidentiary ruling is limited to determining whether the trial-court error is so extreme that it constituted a denial of fundamental fairness under the Due Process Clause.[141] Accordingly, the Court cannot review the assertion of evidentiary errors except to the extent that the purported errors might have violated McDonald's due-process right to a fair trial.

On habeas review under the AEDPA, a constitutional error in a state-court criminal trial is sufficiently prejudicial, and can support habeas relief, only when it has a "substantial and injurious effect or influence in determining the jury's verdict."[142] McDonald appointed his step-mother with durable power of attorney over some civil matters.[143] The State sought to admit a recording of a conversation between McDonald and his step-mother taken while McDonald was in jail.[144] McDonald's attorney objected to its introduction on the grounds that the evidence violated evidentiary rules concerning attorney-client privilege, relevance, and work-product.[145] The trial court overruled the objections.[146] McDonald cannot explain why the trial court and

---

[141] *Andrade v. McCotter*, 805 F.2d 1190, 1193 (5th Cir. 1986); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

[142] *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (citation and quotation omitted); *see also Hughes v. Quarterman*, 530 F.3d 336, 345 (5th Cir. 2008).

[143] 7 Reporter's Record 50–51.

[144] 7 Reporter's Record 40–45.

[145] 7 Reporter's Record 45, 53–54.

[146] 7 Reporter's Record  54.

appellate courts were incorrect when they determined that the recording was admissible.[147]
McDonald has not shown the admission of the recordings constituted a due process violation.
Therefore, this claim remains completely conclusory.[148]

Moreover, even assuming *arguendo* that the admission of the telephone conversations
was error, the demanding *Brecht* harmless error standard also applies on federal habeas review.[149]
Under *Brecht*, even after showing the existence of an error, a petitioner must still show "the error
had substantial and injurious effect or influence in determining the jury's verdict."[150]  In light of
all the evidence tying McDonald to the murder, the relatively innocent conversations between
McDonald and his step-mother cannot be seen to have substantially impacted the verdict.[151]

McDonald has failed to show that the state courts' rulings were unreasonable.

G.      *Trial Court Error - Rebuttal Witnesses*

McDonald next argues the trial court erred by allowing the State to introduce rebuttal
evidence during its case-in-chief.[152]  He explains the trial court granted a motion in limine which
prevented the prosecution from offering evidence of Mount's murder.  However, after McDonald
testified, the State sought to introduce four rebuttal witnesses directly linked to the Florida

---

[147] Pet'r's Mem. 23.

[148] *Ross v. Estelle*, 694 F.2d 1008, 1011–12 (5th Cir. 1983).

[149] *Barrientes v. Johnson*, 221 F.3d 741, 756–57 (5th Cir. 2000) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

[150] *Brecht*, 507 U.S. at 638.

[151] *See* 8 Reporter's Record 83 ("Listen to State's exhibit 42. . . . Because . . . he tells his stepmom, [i]t's really going to boil down to the jury, and well, I've pretty much got that nailed down. . . . Does he say it's self-defense?  Does he say he thinks he was going to die and he had to use deadly force against someone else?  That he was so scared?  No.").

[152] Pet'r's Pet. 14; Pet'r's Mem. 24.

case.[153]  McDonald complains the judge abused his discretion by overruling his counsel's objection and allowing the witnesses to testify "to their opinion of Mr. McDonald's truthfulness."[154]

McDonald predicated his defense on his contention that he was hardworking, truthful, and innocent, while Andrade was unpredictable, violent, and manipulative.[155]  Texas Rule of Evidence 404(a) provides that evidence of a person's character or character traits, although generally not admissible, may be admitted if offered by the prosecution to rebut evidence offered by an accused.[156]  The Texas rule is similar to Federal Rule of Evidence 404(a), which allows "a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it."[157]

In this case, the four rebuttal witnesses did not describe their dealings with McDonald.[158]  They merely testified that they found McDonald untruthful.[159]  The State was entitled to call the four character witnesses to rebut McDonald's testimony concerning his character traits.  Even assuming that the introduction of this evidence was error, incorrect evidentiary rulings do not

---

[153] 7 Reporter's Record 236–46.

[154] Pet'r's Pet. 14.

[155] *See, e.g.*, 7 Reporter's Record 92, 95, 98, 102, 105, 108.

[156] *See* TEX. R. EVID. 404(a) ("Evidence of a person's character or character trait is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except . . . evidence of a pertinent character trait offered . . . by an accused in a criminal case, or by the prosecution to rebut the same.").

[157] FED. R. EVID. 404(a)(2)(A).

[158] Pet'r's Pet. 14.

[159] 7 Reporter's Record 237–45.

provide a basis for federal habeas relief unless federal constitutional rights are affected.[160] Here, the purported error did not rise to the level of a federal constitutional issue. McDonald's claim is meritless; the state court's denial of relief was reasonable.

> H.    *Sufficiency of the Evidence*

McDonald argues the evidence was insufficient to support his conviction or disprove his self-defense theory.[161] He claims the inconsistent statements by the State's expert witnesses concerning Andrade's injuries could not support his murder conviction. He also avers the evidence obtained through Morales's search of her brother's home, his statements given during his interrogations, and his recorded conversations with his step-mother were inadmissible and could not support his conviction.[162]

On federal habeas corpus review, the evidentiary sufficiency of a state court conviction is governed by the legal-sufficiency analysis set forth in *Jackson*,[163] which reflects the federal constitutional due process standard.[164] This standard requires only that a reviewing court determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[165] In conducting that review, the question is whether the evidence is

---

[160] *Tinsley v. Borg*, 895 F.2d 520, 530 (9th Cir. 1990) (explaining incorrect state court evidentiary rulings, in and of themselves, cannot serve as a basis for habeas relief unless federal constitutional rights are affected).

[161] Pet'r's Pet. 16.

[162] Pet'r's Mem. 26–27.

[163] *Jackson v. Virginia*, 443 U.S. 307 (1979).

[164] *Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002).

[165] *Jackson*, 443 U.S. at 319.

constitutionally sufficient to support the conviction, which simply requires that the evidence

merely satisfy the "'substantive elements of the criminal offense as defined by state law.'"[166]  All

credibility choices and conflicts in inferences are to be resolved in favor of the verdict.[167]

Finally, a state appellate court's review of the sufficiency of the evidence is entitled to great

deference,[168] and a federal habeas corpus court may not substitute its view of the evidence for

that of the fact finder.[169]

The indictment charged McDonald with murder:

> **TERRY MCDONALD**, herein after referred to as Defendant,
> **PARAGRAPH A**
> did then and there intentionally and knowingly cause the death of an
> individual, namely, **FELIPE ANDRADE** by **compressing the neck of
> FELIPE ANDRADE with an unknown object** . . .
> **PARAGRAPH B**
> did then and there, with the intent to cause serious bodily injury to an
> individual, namely, **FELIPE ANDRADE**, commit an act clearly dangerous
> to human life, to wit: **compressing the neck of FELIPE ANDRADE with
> an unknown object**, that caused the death of the said **FELIPE ANDRADE**
> . . .
> **PARAGRAPH E**
> did then and there intentionally and knowingly cause the death of an
> individual, namely **FELIPE ANDRADE** by **striking FELIPE ANDRADE
> about the head with an unknown object** . . .
> **PARAGRAPH F**
> did then and there, with intent to cause serious bodily injury to an individual,
> namely, **FELIPE ANDRADE**, commit an act clearly dangerous to human
> life, to wit: **striking FELIPE ANDRADE about the head with an**

---

[166] *Brown v. Collins*, 937 F.2d 175, 181 (5th Cir. 1991) (quoting *Jackson*, 443 U.S. at 324).

[167] *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

[168] *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993); *Parker v. Procunier*, 763 F.2d 665, 666 (5th Cir. 1985).

[169] *Weeks v. Scott*, 55 F.3d 1059, 1061 (5th Cir. 1995).

**unknown object**, that caused the death of the said **FELIPE ANDRADE**
. . . "[170]

In order to find McDonald guilty of murder under Texas law, the jury had to find he (1) intentionally or knowingly caused the death of an individual; (2) intended to cause serious bodily injury and committed an act clearly dangerous to human life that caused the death of an individual; or (3) committed or attempted to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he committed or attempted to commit an act clearly dangerous to human life that caused the death of an individual.[171]

Based on the record, the jury was rationally justified in concluding that McDonald was guilty, beyond a reasonable doubt, of the essential elements of murder. Medical evidence showed Andrade was strangled,[172] and his skull was fractured.[173] Police officers in Wisconsin arrested McDonald in possession of Andrade's belongings.[174] McDonald's "defensive theory at trial was that he killed Andrade in self-defense."[175] From the totality of the evidence presented at the trial, the jury could have reasonably concluded that McDonald's self-defense story was incredible, and that the indictment accurately described his crime. In light of the deference due

---

[170] *See* 1 Clerk's Record 3–4 (Indictment) (emphasis in original).

[171] Tex. Penal Code Ann. § 19.02(b) (West 2005).

[172] 6 Reporter's Record 247.

[173] 6 Reporter's Record 249.

[174] 7 Reporter's Record 27–30.

[175] *McDonald v. State*, No. 08-08-00103-CR, 2010 WL 3910424, at *2 (Tex. App.–El Paso Sept. 30, 2010, pet. ref'd).

to the jury's credibility determination,[176] McDonald has not shown that the evidence was insufficient prove that he committed murder. The state court's denial of relief was reasonable.

I.      *Trial Court Error - Extraneous Offense Evidence*

Finally, McDonald argues that the admission of evidence concerning the Florida murder voided the punishment phase of his trial.[177] This claim renews McDonald's argument that his statements were inadmissible because (1) the *Edwards* rule attached when he requested an attorney in Corpus Christi, (2) adversarial procedures began at the time of his arrest in Wisconsin, (3) interrogators in El Paso ignored his right to counsel, and (4) his October 19, 2005, statements concerning the Florida crime were made only after he requested an attorney.[178] The Court previously addressed each of the underlying claims in different contexts. As described above, these claims are meritless. McDonald made valid waivers of his right to counsel in regard to each of these claims, or the evidence presented was insufficient to show that counsel was improperly denied to the defendant. Therefore, the trial court properly admitted evidence concerning the extraneous murder during the punishment phase of the trial.

Moreover, as described above, a federal habeas court's review of an evidentiary ruling is limited to determining whether the error was so extreme that it constituted a denial of fundamental fairness under the Due Process Clause.[179] McDonald has not shown that "the error had substantial and injurious effect or influence in determining the jury's verdict."[180] Given the

---

[176] *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

[177] Pet'r's Pet. 16.

[178] *Id.* at 16–17.

[179] *Andrade v. McCotter*, 805 F.2d 1190, 1193 (5th Cir. 1986).

[180] *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).

evidence presented to the jury concerning the violent murder and subsequent disposal of Andrade's body, the jury may well have given McDonald the same sentence without having heard about the Mount's murder in Florida. The state court's denial of relief on this claim was reasonable; this claim is without merit.

## IV.  CERTIFICATE OF APPEALABILITY

A petitioner may not appeal a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."[181]  Further, appellate review of a habeas petition is limited to the issues on which a certificate of appealability is granted.[182]  In other words, a certificate of appealability is granted or denied on an issue-by-issue basis, thereby limiting appellate review solely to those issues on which a certificate of appealability is granted.[183]  Although McDonald has not yet filed a notice of appeal, this Court must nonetheless address whether he is entitled to a certificate of appealability.[184]

A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[185]  In cases where a district court rejects a

---

[181] 28 U.S.C. § 2253(c)(1) (2006).

[182] *See Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997) (holding that, in regard to the denial of relief in habeas corpus actions, the scope of appellate review is limited to the issues on which a certificate of appealability is granted).

[183] *See* 28 U.S.C. §2253(c)(3) ("The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required[.]"); *see also United States v. Kimler*, 150 F.3d 429, 431, and n.1 (5th Cir. 1998) (explaining it is well established that a circuit judge may address an issue not certified by a district court if the petitioner makes (1) an explicit request, and (2) a substantial showing of the denial of a constitutional right).

[184] *See* 28 U.S.C. foll. §2254 Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").

[185] 28 U.S.C. § 2253(c)(2); *Gonzalez v. Thaler*, 132 S. Ct. 641, 646 (2012).

-41-

petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[186] To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the petitioner must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."[187] Here, McDonald is not entitled to a certificate of appealability because reasonable jurists would not find the Court's procedural or substantive rulings debatable.

## V. CONCLUSION AND ORDERS

After carefully reviewing the record, the Court finds McDonald has failed to show the state court's denial of relief on his claims was contrary to or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. The Court therefore concludes that McDonald is not entitled relief under 28 U.S.C. § 2254. Accordingly, the Court enters the following orders:

1.     The Court **DISMISSES WITH PREJUDICE** Petitioner Terry Daniel McDonald's pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [ECF No. 1].

2.     Further, the Court **DENIES** Petitioner Terry Daniel McDonald a **CERTIFICATE OF APPEALABILITY**.

---

[186] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

[187] *Id.*

-42-

3.       Finally, the Court **DENIES AS MOOT** all pending motions in this cause.

**SO ORDERED**.

**SIGNED** this ___19___ day of August 2013.

**FRANK MONTALVO**
**UNITED STATES DISTRICT JUDGE**

-43-